IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERICAN INTER-FIDELITY CORP., as Attorney-in-Fact for AMERICAN INTER-FIDELITY EXCHANGE,<br><br>    Plaintiff,<br><br>  v.<br><br>EVAN HODGE and RAYMUNDO IBARRA,<br><br>    Defendants.<br><br>EVAN HODGE,<br><br>    Counter-Plaintiff,<br><br>  v.<br><br>AMERICAN INTER-FIDELITY CORP.,<br><br>    Counter-Defendant. | Case No. 18-cv-04604<br><br>Judge Sharon Johnson Coleman |

**MEMORANDUM OPINION AND ORDER**

  This declaratory judgment action stems from an insurance coverage dispute. American Inter-Fidelity Corp. ("AIFC"), as attorney-in-fact for American Inter-Fidelity Exchange ("AIFE") has filed a second amended complaint against Evan Hodge and Raymond Ibarra[1] seeking a determination as to AIFC's rights and legal obligations under a truckers' auto liability policy it issued to AV Carriers, Inc. ("AVC"). Hodge has asserted a counterclaim against AIFC in which he alleges that AIFC has a duty to defend and a duty to indemnify under the policy. Currently before the Court is AIFC's Federal Rule of Civil Procedure 12(c) motion for judgment on the pleadings as to the second amended complaint and Hodge's counterclaim. For the reasons discussed below, the Court denies the motion.

---

[1] In April 2019, the Court granted AIFC's motion for entry of default against Ibarra. (Dkt. 47.)

1

**Background**

AIFE issued a truckers' auto liability policy to AVC for the period of June 1, 2017 through June 1, 2018 with a $1,000,000 limit of liability ("the AIFE policy"). The AIFE policy provides that AIFC would pay all sums legally owed by AVC because of bodily injury or property damage caused by an accident and resulting from the ownership, maintenance or use of a covered auto. The following exclusions to coverage for bodily injuries are contained in the AIFE policy:

> This insurance does not apply to any of the following:
> . . .
> 2. "Bodily injury" to "person insured" as defined herein, whether such injury is compensable or not under any workman's compensation or disability benefit law or similar law.
> "Bodily injury" to:
> a. An "employee" of the "insured" arising out of and in the course of:
> i. Employment by the "Insured",
> or
> ii. Performing the duties related to the conduct of the "Insured's" business . . .
> 3. "Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow employee's employment or while performing duties related to the conduct of your business.

The AIFE policy does not define "employee," except to state that the term includes a "leased worker" but not a "temporary worker." (Dkt. 28-1 at 1-2, 5, 9-10.)

In 2013, Hodge began working as a truck driver with AVC, after he submitted an "Application for Employment" and an "Employment Record." (Dkt. 28-2.) In December 2013, as part of the application process, AVC provided Hodge with a document titled "Work Rules," which set forth certain conduct requirements and the penalties for violation of those requirements. The Work Rules state, inter alia, that "[a]ll new drivers for first month are employed on probation job until their work Conducts (sic) are evaluated and is satisfactory with [AVC]," that AVC "has the right to terminate the job For (sic) any reason if not satisfied with work qualities of the driver with no further obligations and compensation toward him/her," and that Hodge could be disciplined for

"failure to follow order of dispatch or supervisor." (Dkt. 28-3.) In addition, Hodge signed an "Updated Policy of [AVC]," which contained rules about drivers' use of mobile devices while driving and stated that violation of those rules would result in "termination of [his] employment." (Dkt. 28-4.) Hodge was also given a notice regarding background checks, which indicated that AVC was his "Prospective Employer." (Dkt. 28-5.)

On November 27, 2017, Hodge and Ibarra were "co-drivers" of an AVC truck, meaning that one would drive the truck while the other rode in the passenger seat or rested in the cabin. At approximately 2:25 a.m. on November 27, while Hodge was in the cabin and Ibarra was driving along a Florida road, the truck collided with another vehicle ("the accident"). Hodge alleges that Ibarra caused the accident and further alleges that he was injured in the accident. In January 2018, AIFC advised Hodge that the AIFE policy did not provide coverage for Hodge's alleged injuries. In June 2018, Hodge advised AIFC that he intended to make a claim against AVC and demanded that AIFC pay its policy limits to Hodge to settle his claim (the "underlying claim").

In July 2018, AIFC filed its coverage action in this Court seeking a declaration of its rights and obligations in connection to the underlying claim. In January 2019, Hodge filed a civil action in Florida state court (the "underlying lawsuit"), alleging that he was injured in the accident due to the negligence of Ibarra, AVC, and other defendants. AIFC thereafter filed a second amended complaint in the instant case to add allegations as to the underlying lawsuit and seeking a declaratory judgment regarding the underlying claim and the underlying lawsuit. (Dkt. 1, 28.) Hodge filed an answer to the second amended complaint, admitting to the allegations regarding the "Application for Employment," the "Work Rules," and the mobile-device policy. He also averred that AVC provided him with trucks for him to drive on its behalf, that it informed him of the destinations for the trips he undertook, that AVC dispatchers provided him with instructions as to the location and timeframes for deliveries, and that AVC could terminate him at will. (Dkt. 29 at 1-14.)

3

Hodge also asserted a counterclaim against AIFC, seeking a declaration that AIFC owes a duty to defend AVC in the underlying lawsuit and a duty to indemnify AVC for any judgment entered against it, alleging that the underlying claim is covered under the AIFE policy because he was an independent contractor for AVC, not an employee. In support of his position, Hodge alleges that the payments AVC made to him for his services as a truck driver were reported to the IRS on a Form-1099 as "Nonemployee compensation," that AVC did not withhold taxes from his pay nor make social security contributions on his behalf, and that pay was determined by the number of miles between his pick-up and drop-off destinations without regard to the hours he worked. (Dkt. 29 at 15-21.)

AIFC now moves, under Rule 12(c), for judgment on the pleadings on its second amended complaint and Hodge's counterclaim.

**Legal Standard**

A party can move for judgment on the pleadings once the complaint and answer are filed. *See Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2008) (internal citation omitted). Courts apply the same standard for Rule 12(c) motions as is used for motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014). Thus, the Court views the facts in the light most favorable to the nonmoving party and will grant the motion "only if it appears beyond doubt that [the nonmovant] cannot prove any facts that would support [its] claim for relief." *Landmark Am. Ins. Co. v. Hilger*, 838 F.3d 821, 824 (7th Cir. 2016). "[I]f it appears that discovery is necessary to fairly resolve a claim on the merits, then the motion for judgment on the pleadings must be denied." *Fed. Deposit Ins. Corp. v. FBOP Corp.*, 252 F. Supp. 3d 664, 672 (N.D. Ill. 2017) (Durkin, J.). In considering a Rule 12(c) motion, the pleadings consist of the complaint, answer, and any written documents used as attachments. *See Langone v. Miller*, 631 F. Supp. 2d 1067, 1070 (N.D. Ill. 2009) (Castillo, J.).

4

**Discussion**

The crux of the disagreement between AIFC and Hodge lies in the nature of Hodge's work relationship with AVC. AIFC argues that the AIFE policy does not provide coverage for the underlying claim because, despite Hodge's assertions to the contrary, he was AVC's employee, not an independent contractor, when the accident occurred. AIFC further contends that the pleadings clearly establish an employer-employee relationship because, among other reasons, AVC had the right to control Hodge's work and to terminate him at will, AVC supplied him with the trucks he used to haul loads for customers, and Hodge worked for AVC for nearly four years. Further, AIFC argues that the "[AVC] Independent Contractor Driver and Policy Agreement" Hodge executed when he began working with AVC (the "independent contractor agreement") should receive no weight in the Court's analysis because it provides nothing more than an artificial label with no bearing on the determination of whether Hodge was AVC's employee or an independent contractor.[2] Hodge argues that AIFC cannot carry its burden under Rule 12(c) to show that no trier of fact could find that he was an independent contractor, given the facts asserted in his pleadings, as amplified by the independent contractor agreement.

To begin, the Court addresses AIFC's additional argument that Hodge was an employee of AVC under the statutory definition of the Motor Carrier Safety Act ("MCSA") for purposes of interpreting the AIFE policy. The Court disagrees with that conclusion, as the AIFE policy does not mention or reference the more expansive federal statutory employee definition contained in the

---

[2] Upon careful review of the record, the Court will consider the independent contractor agreement, but will not convert the instant motion to one for summary judgment. The Court finds that, although the pleadings do not directly reference the independent contractor agreement, Hodge executed it the same day as the other onboarding documents he signed. Consequently, the independent contractor agreement is central to Hodge's counterclaim and is necessarily embraced by his pleadings. *See Venture Assoc. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir. 1993); *see also Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 662 (7th Cir. 2002) ("It would have been impossible for the district court or for this court to evaluate the disagreement between the parties without having all of the documentation. It is impossible to render the necessary adjudication without reference to the Employment Agreement.").

MCSA. Applying the AIFE policy as written, the Court finds that the policy does not incorporate the MCSA definition of "employee." *See Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 843 (7th Cir. 2013) (the provisions in a "clear and unambiguous" policy "must be given their plain, ordinary, and popular meaning, and the policy will be applied as written, unless it contravenes public policy"); *see also Nat'l Cont'l Ins. Co. v. Singh*, 2018 WL 3861549, at *3-4 (N.D. Ill. 2018) (Blakey, J.) (collecting cases). Therefore, the Court looks to Indiana law to determine whether Hodge was an employee for purposes of coverage under the AIFE policy.[3]

Under Indiana law, there is no fixed rule for distinguishing independent contractors from employees. Rather, the analysis considers ten factors: "(a) the extent of control which, by the agreement, the master may exercise over the details of the work; (b) whether or not the one employed is engaged in a distinct occupation or business; (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (d) the skill required in the particular occupation; (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work; (f) the length of time for which the person is employed; (g) the method of payment, whether by the time or by the job; (h) whether or not the work is a part of the regular business of the employer; (i) whether or not the parties believe they are creating the relation of master and servant; and (j) whether the principal is or is not in business." *Moberly v. Day*, 757 N.E.2d 1007, 1010 (Ind. 2001). All factors are considered, and "and no single factor is dispositive." *Id.* "Whether one acts as an employee or an independent contractor is generally a question for the finder of fact." *Id.* at 1009. Yet, if the significant underlying facts are undisputed, the Court may properly determine a worker's classification as a matter of law. *Id.*

---

[3] The Court concludes that Indiana law controls according to the choice-of-law provision contained in the AIFE policy, which states that "This agreement has been entered into, and the policy issued, in the State of Indiana, all of the terms and provisions of which shall be governed by laws of such state." (Dkt. 28-1 at 13.)

Applying the *Moberly* factors, the Court finds as follows. As to the extent of control that AVC exercised over the details of Hodge's work, AVC dispatchers provided him the destinations that he was to go to when driving its trucks and advised him of the time and place at which to pick up trailers and deliver his load. On the other hand, Hodge retained discretion as to the jobs he accepted, the routes he took when driving, and the number of hours he worked. It is a close call, but the assertions in the pleadings as to this factor support a conclusion that Hodge was an independent contractor. As to whether or not Hodge was engaged in a distinct occupation or business, Hodge was a truck driver working for AVC, a trucking company. As such, Hodge's work "was not entirely disjointed from the business of [AVC]," which "weighs in favor of finding an employer-employee relationship." *Ind. Ins. Co. v. Am. Cmty. Servs., Inc.*, 768 N.E.2d 929, 937 (Ind. App. 2002). As to whether truck driving is work usually done under the direction of the employer or by a specialist without supervision, AVC did not supervise Hodge's day-to-day work. Regarding skills and training, Hodge had the skills and licenses required of an interstate truck driver and the independent contractor agreement stated that AVC would not supply training to Hodge beyond the minimum required by federal statutes. These factors support a finding that Hodge was an independent contractor with AVC.

AVC supplied the tractors and trucks that Hodge used to haul loads, including the truck that was involved in the accident. Hodge's pleadings state that he was required to supply a cell phone at his own expense and that he often supplied other materials required for his work, such as blank trip logs and vehicle-inspection forms. However, on balance, AVC's provision of the truck and tractors to Hodge favors a finding that Hodge was an employee of AVC. Next, Hodge had worked for AVC for almost four years at the time of the accident, a period of time indicative of an employer-employee relationship. *See Moberly*, 757 N.E.2d at 1012 ("employment over a considerable period of

7

time with regular hours" and "one who performs continuous service for another" are indicators of employee status).

As to the method of payment, the independent contractor agreement states that Hodge's pay was computed based on dispatched miles and that AVC did not guarantee him a specific amount of loads, hours, or revenue. He was not paid by the hour and was not paid at regular intervals but was instead was paid within seven days of when a customer remitted payment to AVC, which could take approximately 30 to 90 days after delivery. His compensation was reported on an IRS Form-1099, tax deductions were not withheld from his pay, and he did not receive any benefits. These facts heavily favor a determination of independent contractor status. As to what type of work relationship the parties believed they were creating, the pleadings are not clear: certain documents Hodge signed indicated that he would be an employee for AVC but the independent contractor agreement indicates otherwise. As to whether the principal is or is not in business, again, AVC was a trucking business and this factor weighs in favor of employer-employee status.

Finally, although the following facts do not fit neatly into the *Moberly* factors, the Court notes that AVC had the right to discipline Hodge for certain violations of its rules, and that Hodge was considered "at-will," meaning he could be discharged at any time. These facts lead to the finding of an employer-employee relationship. Viewing all of the pertinent factors together with the independent contractor agreement in the light most favorable to Hodge, the Court cannot conclude that the relevant facts permit only one inference as to the nature of the work relationship between Hodge and AVC. As such, judgment on the pleadings in favor of AIFC is not appropriate. *See Bank of New York Mellon v. Estrada*, 2013 WL 3811999, at *1 (N.D. Ill. 2013) (Lee, J.) (a Rule 12(c) motion is designed to provide a means of disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court will take judicial notice).

**Conclusion**

For the foregoing reasons, the Court denies AIFC's Rule 12(c) motion for judgment on the pleadings [42].

**IT IS SO ORDERED.**

Date: 3/24/2020

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge